UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

THOMAS PRESLEY,                )
                               )
        Plaintiff,             )
                               )
v.                             )    Case No. CIV-18-573-G
                               )
SCOTT CROW[1] et al.,          )
                               )
        Defendants.            )

## OPINION AND ORDER

Now before the Court are the following motions: (1) Motion to Dismiss by Defendants Scott Crow and Joe M. Allbaugh (Doc. No. 26); (2) Motion to Dismiss by Defendants Sara Givens and Michael McDougell (Doc No. 28);[2] and (3) Plaintiff's Motion

---

[1] Plaintiff asserts claims against Joe M. Allbaugh, the former director of the Oklahoma Department of Corrections ("ODOC"), in both his official and individual capacities. Am. Compl. (Doc. No. 12) at 4. As to the official-capacity claims, Scott Crow—the Interim Director of the Oklahoma Department of Corrections—is hereby substituted for Allbaugh. *See* Fed. R. Civ. P. 25(d).

[2] Each of the Defendants' motions is titled "Motion to Dismiss." However, with respect to the dispositive argument—nonexhaustion of administrative remedies—both briefs rely on materials outside of the pleadings and public record. *See* Crow/Allbaugh Mot. (Doc. No. 26) at 3-6; Givens/McDougall Mot. (Doc. No. 28) at 3-6. The Court expressly advised the parties that "a dispositive motion based on the affirmative defense of failure to exhaust administrative remedies is typically considered a motion for summary judgment." Order of Aug. 24, 2018 (Doc. No. 13) at 3 n.1. Moreover, Plaintiff referenced summary judgment in a responsive filing, *see* Doc. No. 32, at 3, and presented several exhibits relevant to the Motions, *see* Doc. Nos. 29-1, 29-2, 32-1. Thus, it is evident from Plaintiff's responsive submissions that Plaintiff was on notice to present materials pertinent to Defendants' Motions and that Plaintiff desired the Court to consider materials outside the pleadings in ruling on these Motions. *See* Doc. Nos. 29, 30, 32. Accordingly, the Court will treat both motions as seeking summary judgment. *See* Fed. R. Civ. P. 12(d), 56(c)(1); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000) (stating that the "essential inquiry is whether the [party] should reasonably have recognized the possibility that the motion might be converted to one for summary judgment" (internal quotation marks omitted)).

for Leave to Amend Complaint and Appointment of Counsel (Doc. No. 30). On review of the parties' arguments and the record, the Court determines that Defendants' motions should be granted on the ground that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and that Plaintiff's requests for leave to amend and for appointment of counsel should be denied.

## BACKGROUND

Plaintiff's claims are based on Defendants' alleged "procrastination" in scheduling a knee-replacement surgery, which Plaintiff claims is "needed to allow [him] to walk without pain." Ex. 1 to Am. Compl. (Doc. No. 12-1) at 1.[3] The record reflects that Plaintiff first complained of stiffness in his right leg on January 18, 2013. *See* S.R. Ex. 7 (Doc. No. 24-7) at 2. On August 7, 2013, an x-ray of Plaintiff's right knee showed "[s]evere narrowing of the medical joint compartment with osteophytes and periarticular severe sclerosis." *Id.* at 11. Plaintiff was ordered a stabilizing brace in November 2013, *id.* at 18, 20, and a hinged knee brace in June 2015, *id.* at 48-49.

Between November 2013 and October 2018, Plaintiff was evaluated and treated for knee pain on multiple occasions.[4] *See id.* at 21-175. On March 6, 2018, Plaintiff was advised that knee-replacement surgery would "be the only way for him to achieve more

---

[3] References to documents electronically filed in this Court use the CM/ECF pagination.

[4] These medical evaluations appear to have been scheduled in response to Plaintiff's Request for Health Services ("RHS") and Requests to Staff ("RTS"), copies of which are attached to the Amended Complaint. *See* Ex. 2 to Am. Compl. (Doc. No. 12-2) at 3 (RHS dated 1/19/2016); Ex. 3 to Am. Compl. (Doc. No. 12-3) at 1 (RTS dated 4/19/2016), 2 (RTS dated 7/10/2016), 3 (RTS dated 10/04/2017), 4 (RTS dated 7/06/2017).

2

comfort." *Id.* at 167.  At that time, however, Plaintiff opted for a less invasive treatment. *Id.* (noting that "[a]fter a lengthy discussion" regarding "further treatment options" for Plaintiff, "he opt[ed] for Cortison injection").  It wasn't until October 18, 2018 that Plaintiff expressed his "read[iness] to be considered for [knee-replacement surgery]."  *Id.* at 176.

On October 26, 2017, Plaintiff submitted a Request to Staff requesting knee surgery and pain medication.  *See* Ex. 3 to Am. Compl. (Doc. No. 12-3) at 5.  In response, DOC officials stated that Plaintiff's pain medication had been replaced and informed him that knee surgery requires committee approval and that the approval process "takes several months."  *Id.*  On May 21, 2018, Plaintiff submitted another Request to Staff inquiring about the status of his knee surgery. *Id.* at 6.  In response, Plaintiff was again advised about the approval process required for knee surgeries.  *Id.*

Plaintiff filed this lawsuit on June 13, 2018, apparently without taking further action on his May 21, 2018 Request to Staff.[5]  *See* Compl. (Doc. No. 1).

## ANALYSIS

I. *Defendants' Motions for Summary Judgment*

  A. Standard of Review

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material

---

[5] On August 6, 2018, Plaintiff filed an Amended Complaint, which is the operative pleading for purposes of Defendants' summary-judgment motions.

3

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish *all* of the elements of the defense. *See*

4

*Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment must be granted in favor of the defendant. *Id.*

   B. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that § 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

   C. The Oklahoma Department of Corrections' Grievance Process

ODOC has adopted an offender Grievance Process, OP-090124, through which a prisoner in its custody may seek administrative decisions or answers to complaints. *See* OP-090124 (eff. Oct. 18, 2017) (S.R. Ex. 2 (Doc. No. 24-2)). The ODOC Grievance Process requires an inmate initially to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant incident. *See*

*id.* § IV(B). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id.* § IV(C). This first informal level may be bypassed only if the complaint involves a sensitive topic or when there exists a "substantial risk of personal injury, sexual assault or other irreparable harm." *Id.* § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within 15 days of the date of the receipt of a response to a timely Request to Staff. *See id.* § V(A)(1). The grievance is submitted to the facility's Reviewing Authority, defined as the "facility head or facility correctional health services administrator (CHSA) where the incident occurred." *Id.* §§ I(D), V(B)(1). This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority. *See id.* § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within 15 days of the receipt of that response. *See id.* § VII(A), (B). The grievance appeal is submitted to the Administrative Review Authority ("ARA"), defined as the ODOC Director's designee or the ODOC Chief Medical Officer's designee. *See id.* §§ I(E), VII(B). A grievance appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority such as would be grounds for reversal. *Id.*

§ VII(A). The ruling of the ARA is final and concludes the administrative remedy procedures available through ODOC. *Id.* § VII(D)(1).

D. Plaintiff's Exhaustion Efforts

The record reflects that, while Plaintiff has filed multiple Requests to Staff concerning his knee pain and/or corrective surgery,[6] he has never filed a formal grievance with the appropriate correctional health services administrator; nor has he filed a grievance appeal with the Medical Administrative Review Authority ("MARA"). *See* OP-090124, at §§ V(B)(1); VII(B)(1). The Special Report states:

> According to the MARA offender grievance log, and a review of the offender grievance files maintained in the MARA office, the MARA has not received any medical grievance appeals, or any other correspondence from [Plaintiff], on or after January 1, 2013.

S.R. at 4.

In a filing entitled "Response to Special Report"—which the Court liberally construes as a response to Defendants' summary-judgment motions—Plaintiff asserts that "all [of his] Requests to Staff and Grievances . . . were discarded by DOC staff." Resp. to S.R. (Doc. No. 32) at 1. Plaintiff makes similar accusations in his Motion for Leave to Amend and Appointment of Counsel. *See* Pl.'s Mot. (Doc. No. 30) at 2 (stating that prison staff "discard[ed] [his] Requests to Staff and grievances . . . return[ing] some unanswered, and refus[ing] to send [them] to IHCC Medical Adm. and/or ODOC Administrative Appeals Med Office").

---

[6] *See* Ex. 2 to Am. Compl. (Doc. No. 12-2) at 3 (RHS dated 1/19/2016); Ex. 3 to Am. Compl. (Doc. No. 12-3) at 1 (RTS dated 4/19/2016), 2 (RTS dated 7/10/2016), 3 (RTS dated 10/04/2017), 4 (RTS dated 7/06/2017), 5 (RTS dated 10/26/2017), 6 (RTS dated 5/21/2018).

"Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). In this case, however, there is no acceptable evidence that prison officials rendered the administrative review process "unavailable" to Plaintiff. For example, Plaintiff does not attempt to show that he was "den[ied] . . . the necessary grievance forms." *Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004). Nor does he attempt to refute the possibility that his grievances were rejected for permissible reasons, such as failure to "follow instructions as explained . . . on the grievance forms." OP-090124 § V(A)(7); *see also id.* §§ II(C), VI(B)(6). In short, Plaintiff's conclusory and uncorroborated statement that unspecified grievances were "discarded" by prison staff does not support a finding that the administrative review process was made "unavailable" to Plaintiff, even assuming the referenced grievances relate to his claim for denial/delay of knee-replacement surgery.

In any event, Plaintiff's unsworn statements are not evidence that would create a genuine factual dispute for summary judgment purposes.[7] *See, e.g., Simpson v. Jones,* 316 F. App'x 807, 811–12 (10th Cir. 2009) ("In the absence of other evidence, an unsworn

---

[7] Plaintiff has also submitted a sworn affidavit from Charlie G. Johnson, a fellow inmate who "worked on the same paint crew as [Plaintiff]." Ex. 1 to Resp. to S.R. (Doc. No. 32-1) at 1. Mr. Johnson's affidavit relates to an incident in which Plaintiff fell from a ladder he was allegedly forced to climb despite his protests that he "d[id]n't feel well" and "need[ed] the day off." *Id.* Nothing in Mr. Johnson's affidavit would support a finding that prison staff discarded Plaintiff's grievances or otherwise rendered the administrative review process "unavailable" to him.

8

allegation does not meet the evidentiary requirements of Fed. R. Civ. P. 56" and therefore "fails to create a genuine factual dispute for summary judgment purposes").

The liberal construction afforded Plaintiff's filings does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. Plaintiff fails to present evidentiary material specifically supporting his contention that Defendants thwarted Plaintiff's compliance with administrative exhaustion procedures such that exhaustion should be excused. *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Defendants . . . bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials." (citation omitted)); Fed. R. Civ. P. 56(a), 56(c)(1). Accordingly, the Court concludes that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in favor of Defendants on Plaintiff's claims.

## II. *Plaintiff's Motion for Leave to Amend and Appointment of Counsel*

### A. Request for Leave to Amend

The Federal Rules of Civil Procedure allow a plaintiff to amend his or her complaint once as a matter of course within 21 days after serving it, or within 21 days after the earlier of service of a responsive pleading or of certain Rule 12 motions. *See* Fed. R. Civ. P. 15(a)(1). In all other cases, the plaintiff may amend the complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Leave to amend should be denied, however,

where amendment would be futile, cause undue delay, or unduly prejudice the opposing party. *Ali v. Dinwiddie*, 291 F. App'x 164, 166-67 (10th Cir. 2008) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Plaintiff has not put forward any facts that might supply grounds for excusing his failure to exhaust. Accordingly, the Court concludes that amendment would be futile and, on that basis, denies Plaintiff's request for leave. *See Magallanes v. Harding*, 730 F. App'x 712, 714 (10th Cir. 2018) (affirming denial of leave to amend where Plaintiff "[did] not explain how he could overcome his failure to exhaust").

B. Request for Appointment of Counsel

While a federal court may, in its discretion, request legal representation for a civil litigant proceeding *in forma pauperis*, it cannot require counsel to take the case. *See* 28 U.S.C. § 1915(e)(1). Before the Court will make such request, "[t]he burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985). In determining whether an appointment of counsel for a prisoner proceeding *in forma pauperis* is warranted, the court considers "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

Plaintiff submits that he "is not qualified to do this case from a legal point," that "no inmate is allowed to assist [him] in actually doing the case," and that, he "do[es]n't know how to carry out (write) what [the clerks] tell [him] to do." Pl.'s Mot. (Doc. No. 30) at 1.

The Court understands Plaintiff's concerns as a prisoner representing himself but must deny his request to appoint counsel. The circumstances described in Plaintiff's motion, unfortunately, do not distinguish Plaintiff from many other persons in a similar situation. More to the point, Plaintiff has not carried his burden of establishing that his claim has sufficient factual support to proceed. Accordingly, Plaintiff's request for the appointment of counsel is denied.

## CONCLUSION

Based on the undisputed factual record, the Court rules as follows:

1. Plaintiff has failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Accordingly, Defendants' Motions (Doc. Nos. 26 and 28) are GRANTED.

2. Plaintiff's request for leave to amend is DENIED on the ground that amendment would be futile.

-and-

3. Plaintiff's request for appointment of counsel is DENIED on the ground that Plaintiff has not sustained his burden of showing that his claim has merit.

A separate judgment shall be entered.

IT IS SO ORDERED this 30th day of September, 2019.

_____
CHARLES B. GOODWIN
United States District Judge